MILLER, Judge.
The trial court awarded plaintiff Dan A. Ritchey, Jr. a $6,900 commission for services rendered as a realtor. Defendants owners C. P. Hilliard and Frank R. Bailey, Jr. appeal, contending that the exclusive listing contract terminated before the property was sold. The trial court held that owners violated their contract by interfering with realtor’s right to sell the property. The interference was committed when, during the contract period, the owners negotiated privately with prospects developed by realtor, for a sale price of $115,000 net to the owners without releasing realtor from the asking price of $132,500. We affirm.
Defendants owned a 90x290 foot tract which fronts Johnston Street across from the University of Southwestern Louisiana in Lafayette. Three years of efforts to develop the tract were fruitless. On November 2, 1967, owners contracted to award realtor
“the exclusive right to sell the property for a period of 12 months from this date, during which time we shall not list it with anyone else for sale, and not to interfere in the sale of the property during the term of this contract. If and when we receive an acceptable offer, we agree to pay you a commission of 6% or a maximum of $7,500.00 on the gross amount of any deal (sale or exchange) bearing on said property that may be negotiated during the existence of this contract, or on the gross amount of any such agreement made within thirty (30) days after the expiration or termination of this contract to anyone to whom this property has been exhibited, quoted or offered for sale by you.”
The contract authorized realtor to sell the property for $132,500.00 cash, or on acceptable terms, and it authorized realtor to receive a lesser offer for the property with the understanding that such offers would be submitted for owners’ consideration or acceptance.
Under the contract, plaintiff’s fee would be earned if an acceptable offer “may be negotiated during the existence of this contract.” Pretermitting the question of whether or not an acceptable offer was negotiated during the existence of the contract, we turn to the trial court’s finding that owners interfered with realtor’s right to sell the property during the exclusive listing period.
During November and December of 1967, one of realtor’s agents attempted to sell the property for the asking price. He failed to develop a prospect. He contacted owners and it was verbally agreed that owners would develop a shopping center and realtor would assist in leasing space to various businesses. Owners and realtor vigorously attempted to interest prospective tenants. Plaintiff firmed up an agreement with William C. Davis, Jr. for space for a Pitt Grill, but they were unable to get commitments for the remaining space. By July, owners and realtor abandoned their efforts to build a shopping center and realtor returned to the attempt to sell the property at the listed price.
*813 Efforts were made by realtor to sell the property to Mr. Davis (for Pitt Grill) and to both adjacent owners, a Mr. Richard and the Trinity Lutheran Church. Richard was not interested at any price. Both Davis and the Pastor of the Church were interested but not at the asking price.
Sometime later owners suggested to realtor that realtor should seek offers to purchase at an amount less than $132,500. About the same time the Pastor of the Church contacted the owners directly to see if the property could be purchased for $75,000. It was the Pastor’s understanding that the property was for sale for $100,000. This was based on the fact that one of realtor’s agents had prepared an offer for the church to propose to the owners a purchase at that price. Owner Hilliard was shocked to learn that such an asking price was suggested by realtor. From that time there was little if any information given by owners to realtor’s agents.
Defendant Hilliard then proposed to Davis that he might purchase part of the property for a Pitt Grill and let the Church buy part for their needs. As early as August, 1968, but not later than September 3, 1968, owners had by direct negotiations with Davis and the Church reduced the sales price to one of “net $115,000”, meaning owners were to receive $115,000 free of commissions. It was also understood by both Davis and the Pastor of the Church that realtor’s listing was about to expire.
Realtor’s agent telephoned Davis during this period but he was unavailable. Efforts were made to contact the Church member with whom another of realtor’s agents was dealing, but this member reported that the matter was “out of his hands.” Owners admit that they did not inform realtor of these negotiations. At this point realtor’s agents abandoned hope of getting a satisfactory offer for the property.
In the meantime Davis had agreed (as early as September) that he would pay $65,000 for the front 120 feet of the property. This fact was not communicated to realtor. Also not communicated was the fact that on October 9, 1968, the church board in New Orleans met to approve the purchase for its part of the back part of the property for the price of $50,000 and to authorize a loan for that amount from the General Church Extension Fund. But the purchase could not be made without approval of the membership of Lafayette Trinity Lutheran Church.
Following a discussion of the proposed acquisition at a special meeting of the Church membership held November 10, 1968, a vote was held on November 17, 1968 and the proposal to acquire the property was rejected. There were at least two problems. (1) The Church membership had not decided whether or not it would continue its student emphasis which would require more property, or limit its activities and possibly move to a less crowded location. (2) The church membership demanded a right of passage from Johnston street. Davis had agreed to give the right of passage. But the November 17th rejection by the congregation was apparently based on their desire to own the land under the right of passage. In turn they were willing to give Davis a right of passage. This was acceptable to Davis.
The deeds were dated December 31, 1968, but not approved by the Church membership until their January 5, 1969 meeting. Owners received $65,000 for the frontage and $50,000 for the back portion.
It is not contested that realtor’s agents had exhibited and offered this property for sale to the purchasers.
We find no manifest error in the trial court’s factual determination that the private negotiations held between owners and the ultimate purchasers and the owners withholding from plaintiff the reduced asking price, were an interference with realtor’s exclusive right to sell this property. Under the facts, the exclusion of the Ritchey firm from private negotiations and *814 from knowledge of the reduced asking price, whether deliberate or non-deliberate, constituted an interference.
Defendants appellants point out that the contract did not require owners to refer prospects to Ritchey. But the contract prohibited owners from interfering with the sale of the property by Ritchey.
Owners contend that the contract unequivocally allows owners to sell the property after December 2, 1968 to anyone, including prospects found by Ritchey and cultivated by him throughout the term of the contract and the additional 30 days. But owners where obligated “not to interfere in the sale.”
Owners contend that their negotiations did not interfere with realtor’s right to sell the property. But the opinion expressed by plaintiff Ritchey was accepted by the trial court. When the owner starts dealing privately with the realtor’s prospects and when they have an opportunity to save the commission, the realtor is “dead.” Tr. 191. At Tr. 192, 3 Ritchey explained that “In our business, human nature being what it is, most buyers if there is a communication direct with the owners and any indication that they could work out a net figure then our efforts are just fruitless. Our negotiations cease because they have a better chance of making a better deal with the owner. That’s the essence of our business.”
Defendants appellants contend that the case of Clesi v. Cooney, 164 La. 657, 114 So. 584 (1927) as interpreted by the case of Alex F. Dreyfus Co. v. Friedman, 171 La. 90, 129 So. 679 (1930) support the position that negotiations by the owner during the contract do not constitute interference. We find that Clesi as interpreted by Dreyfus supports the trial court’s decision.
Both opinions were by Chief Justice O’Niell. In Clesi the defendant property owner during the listing agreement with plaintiff realtor, had contracted to sell the property at a lower price to a third party provided the realtor did not sell the property during the contract period at the higher list price. Owner notified realtor of these negotiations. The case was remanded to the trial court to determine whether or not these actions constituted an interference. In Dreyfus at 129 So. 679, 680, the court explained that in Clesi they “remanded the case for trial on its merits, saying that the contract made by Cooney (owner) with Ferrara (third party) during the term of the contract with Clesi (realtor) did not render Cooney liable to pay a commission to Clesi, unless it interfered with Clesi’s right to sell the property and thereby earn the commission during the term of the contract.”
Here the facts demonstrate that owners interfered with realtor’s exclusive listing during the term of the contract.
The judgment of the trial court is affirmed. Costs are assessed to defendants appellants.
Affirmed.